## OCTOBER TERM, 1768.

### NORRIS's Lessee *vs.* POTTEE.

EJECTMENT for a tract of land called *Everly Hill,* lying in Baltimore county, containing 394 acres.

## FACTS STATED.

*Everly Hill*, containing 394 acres, granted to *Thomas Preston* on the 10th of November 1695, lying in Baltimore county, above the head of Bush River, beginning at a bounded *white oak*, [A] standing on the E. side of Winter's Run, it being a bounded tree of *Mark Richardson's* called *Poplar Neck*, and running *with Poplar Neck line* N. E. 368 perches to *a bounded white oak*. [B.] standing by a spring in a branch descending in *Bynam's Run*, then S. E. by S. 146 perches to a bounded red oak standing on a hill, then S. 116 perches to a bounded red oak, then W. 19 deg. southerly 360 perches, *to a parcel of land of Michael Gibson's*, then with a direct line to the first bounded tree, containing 394 acres of land.

*Thomas Preston*, (son of the Patentee,) to *John Norris*, the father of the lessor of the plaintiff, deed dated 4th of March 1718, conveyed *Everly Hill* by course and distance, containing 356 acres, with general warranty.

*John Norris* to his son *Benjamin Norris*, the lessor of plaintiff, deed of gift dated 9th of November 1724, for part of *Everly Hill*, beginning at a bounded or marked oak, [C.] standing in or near the N. E. line of the said land, and on the S. W. side of a great Rowling Road, and near the said road side, and running thence N. E. 120 perches, to *the end of the whole N. E. line of the aforesaid land*, &c. for 170 acres of land.

*John Norris*, by will dated 1st November 1737, gave to his son *Thomas Norris*, in fee, all the remaining part of *Everly Hill* not made over to his son *Benjamin*.

*Thomas Norris*, the devisee, by deed of bargain and sale, dated 22d February 1742, conveyed to *Benjamin Norris*, the lessor of the plaintiff, for his part of *Everly Hill*, beginning at a bounded white oak, the second bounder of *Poplar Neck*, and running with *Poplar Neck* N. E. 248 perches, &c. containing 173 acres of land.

*Michael Taylor*, by deed of bargain and sale dated the 13th of March 1730, conveyed to *Benjamin Norris*, the lessor of the plaintiff, part of a tract of land called *Birr*, containing 120 acres of land, [at F.]

*Michael Taylor*, by deed of bargain and sale, dated the 13th March 1730, conveyed to *Lewis Pottee*, the defendant, part of the said tract of land called *Birr*, containing 200 acres of land, [at E.]

The plaintiff at the trial at the assizes offered to read in evidence the above deed from *Thomas Preston* to *John Norris*, to prove that the title of the whole tract of land called *Everly Hill* was in the said *John Norris*, the vendee therein mentioned. The defendant objected that the same was not evidence of title to the whole, but only to part of the tract of land called *Everly Hill*.

*Jenings*, (Attorney General,) and *Johnson*, for the plaintiff. Two points raised on the part of the plaintiff.

1st. The natural expressions in the certificate and patent of *Everly Hill*, are to a bounded *white oak standing by a spring in a branch descending in Bynam's Run, &c.*

2d. The proof to the white oak at B. is by *Peter Whitaker*.

*Chase*, *Paca* and *Hall*, for the defendant, contended as to the *first point*, that the certificate of *Everly Hill* has three expressions which are not gratified by the plaintiff's locations on the plots. He has located the tract beginning at a heap of stones, and running thence N. 43 deg. E. 630 perches, to where he says a bounded white oak stood, then S. E. by S. 146 perches, S. 116 perches, S. W. 472 perches, to a bounded white oak of *Gibson's Ridge*, and thence to the beginning, containing 708 acres. The patentee thought himself confined by course and distance in 1718, when he conveyed to *Norris*—he left out all the boundaries, and gives a course (the last,) which is not in the patent. He either apprehended himself confined to course and distance, or that the bounds were lost. He only conveyed 356 acres, 38 acres less than the quantity granted to him. He gave a general warranty; and *Norris* could take no more than was conveyed, or intended to be conveyed to him. *Preston* conveyed only what land might be contained in the courses expressed, containing 356 acres, clear of elder surveys, and for that purpose added the last course, which is not in the patent.

*John Norris*, who bought, thought he purchased *Everly Hill* by course and distance; for by his gift to his son, the lessor of the plaintiff, he begins at C. and runs N. E. 120 perches—to no tree—and conveyed only 170 acres.

*Thomas Norris*, his son, when he sold to the lessor of the plaintiff in 1742, and the lessor of the plaintiff when he purchased, thought the same. His deed begins at A. running with *Poplar Neck* N. E. 248 perches. Now add this 248 to 120 perches in *Norris's* deed of gift, and it makes out the 368 perches, the first line of *Everly Hill*, as in the certificate.

*Benjamin Norris*, the lessor of the plaintiff, thought also the same in 1730, when he bought his part of *Birr*. His deed says, until it intersects a tract of land called *Everly Hill*; and he has thought so since, till within 2 or 3 years; add to this, the defendant's long possession of 38 years.

General words are controled by particular expressions. The intent of the parties is always to be observed and ought to govern. The law will make such a

reasonable intendment upon the whole, as will restrain the general words from affecting *Preston* by his warranty, which was never intended or thought of by the parties. The courses, &c. after the general words, are but one and the same sentence, and connected with the former. The general words should not be construed beyond the intention of the parties. The special words are words of qualification and abridgement. The latter expressions qualify the general words, and restrain the general expressions of *Everly Hill* to the land contained within the courses only. This deed should be so construed, that the thing may pass according to the meaning of the parties. No construction should be made contrary to the express words of a grant. Every grant should be expounded as the intent was at the time of the grant. A deed should be so construed, that all parts may stand together. The law will never make any construction against the purport of a grant to the prejudice of any, or against the meaning of the parties. This clause is general, and the sentence entire. The courses, &c. are words of restriction, and declare the intent, that nothing should pass but what was included by them. The words of a deed ought not to be rejected and made useless, as long as they may be reduced to good sense, and are not repugnant in themselves. Our construction is founded on a maxim and principle of law, viz. Where a deed speaks by general words, and afterwards descends to special words, if the special words agree to the general words the deed shall be intended according to the special words—8 *Co.* 154. *Subsequent words* may *qualify* and *abridge,* but not *destroy* the *generality* of the words *precedent*—8 *Co.* 154. The distinction is, they avail as words of restriction, when the clause is general, and the sense entire, but not when it is distinct—2 *Mod.* 3, 4. If a man grant his manor of D. in the county of M. if the manor lie in that county and another, then no more passes than is in M.—2 *Roll. Ab.* 50, 51. If a thing be granted generally, and there comes a viz. which *destroys the grant,* it is void, being repugnant to the thing first granted—2 *Bac. Ab.* 665. Where a thing is *not granted* by an *express name, there,* if a falsity is in the description of that thing, the grant is *void;* but if a thing *is granted,* by an *express name,* though there is a falsity in the description, yet the grant is good—*because* the addition of a falsity shall never hurt, where there is a certainty before—*Coke (Boddington's Case.) Cro. Car.* 548. If part of a description is false, the grant is void—*Hob.* 171. When two clauses in a deed, one contradictory to the other, the first shall stand—*Hard.* 94. *Brid.* 101.

Other cases cited—*Saund.* 60. *Godb.* 237. *Carth.* 120. 1 *Show.* 151. 2 *Roll's Rep.* 279. *Plow.* 173. *Hob.* 168. *Moore,* 176. 2 *Bac. Ab.* 161. *Vin. tit. Grant,* 57, *pl.* 1; 58, *pl.* 2, 3; 59, *pl.* 21; 25; 69, *pl.* 39, 40, 41, 44; 62, *pl.* 54, 56; 63, *pl.* 62; 89, *pl.* 4; 94, *pl.* 5. 8 *Co.* 154. 2 *Roll's Ab.* 50, *pl.* 3; 51, *pl.* 14.

As to the *second point,* it was contended that it was mere hearsay evidence, and that of a single witness. Such evidence is liable to the imperfection of memory, and when the remembrance of things fail, men are apt to entertain opinions in their room.

A continual quiet possession is a violent presumption of title, and the law doth ever respect and favour long possession for the purpose of quieting men's estates, and for voiding suits. The defendant's possession is for 38 years, known and acknowledged by the plaintiff's lessor. Is he wiser than his father and brother, or even the patentee of the land? On the one hand it will do the plaintiff no injury, it will only punish him with costs for his litigious disposition; and on the other it will preserve an ancient possession.

*Johnson* and *Jenings,* (Attorney General,) in reply, cited *Callister's* case.

HEPBURN, J. was of opinion that the deed from *Thomas Preston* to *John Norris* conveyed the title in the whole tract of land called *Averly Hill* to the said *Norris.*

The defendant excepted. *Verdict* for the defendant; and upon return of the *Postea,* the PROVINCIAL COURT rendered judgment on the verdict, for the defendant.

Mr. *Jenings,* in his argument in the case of *Helms vs. Howard,* (*2 Harris and M'Henry.* 74,) observed, "a case was cited to have been determined in the provincial court between *Norris* and *Pottee,* about 14 years ago, where an ejectment was brought for land which had both courses and distances, and bounds. The conveyance contained courses and distances, but not the bounds, and it was held that the party was not confined to the courses and distances."